# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

STEPHEN E. AYOUB, and KELLY T. STEINBERGER

      Plaintiffs,

      v.

SOFTCHOICE, INC.

      Defendant.

CIVIL ACTION
No. 1:11-cv-02745-SCJ

## O R D E R

This matter is before the Court on Plaintiffs' motion for judgment on the pleadings and for permanent injunction [Doc. No. 31], Plaintiffs' motion for reconsideration and clarification [Doc. No. 53] of the Court's April 4, 2012 order ruling on the discovery disputes between the parties, and on the parties' joint motion to amend scheduling order [Doc. No. 54].

## I.    BACKGROUND

Plaintiffs Stephen E. Ayoub and Kelly T. Steinberger are salespeople and former employees of Optimus Solutions, Inc., a Georgia corporation selling computer systems. Defendant Softchoice, Inc. is a Canadian corporation selling computers and computer accessories. Softchoice acquired Optimus Solutions in January 2008. Upon that acquisition, Plaintiffs became employed by Softchoice and

continued working for Softchoice until their resignation and the subsequent termination of their employment on August 5, 2011. Following their resignation, Plaintiffs formed Data Blue LLC, with the intent of pursuing "other professional opportunities in their field of expertise" [Doc. No. 11, ¶ 76]. Data Blue, allegedly, sells the same products as Softchoice [Doc. No. 17, ¶ 35].

Ayoub and Steinberger signed successive employment agreements containing various restrictive covenants while employed by Optimus Solutions. The last of these agreements was signed by Ayoub in 2007 ("Ayoub Agreement") and by Steinberger in 2008 ("Steinberger Agreement").[1] Plaintiffs filed this action seeking a declaratory judgment proclaiming all restrictive covenants void and unenforceable and seeking to enjoin Softchoice from enforcing the covenants. Softchoice has counterclaimed for breach of contract, alleging that Plaintiffs have breached the terms of their employment agreements as they are soliciting Softchoice's customers and recruiting its employees in contravention of their agreement not to compete against Softchoice or to solicit its employees.

Plaintiffs seek judgment on the pleadings as to their claim for declaratory judgment as well as to Softchoice's counterclaim for breach of contract. Plaintiffs

---

[1] Softchoice's status as successor to these agreements is uncontended.

also request that Softchoice be permanently enjoined from seeking to enforce the restrictive covenants at issue. Additionally, the parties have jointly moved to amend the scheduling order to accommodate an extended discovery period, and Plaintiffs have requested that the Court reconsider and clarify its order [Doc. No. 51] pertaining to discovery matters. Below, the Court addresses each motion in turn.

## II.     MOTION FOR JUDGMENT ON THE PLEADINGS AND PERMANENT INJUNCTION

### A.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings once the pleadings are closed. The applicable legal standard is the same as for Rule 12(b)(6) motions to dismiss. *Latonnelle v. CitiMortgage, Inc.*, No. 1:10-CV-04066-TWT-WEJ, 2011 WL 4974839, at *2 (N.D. Ga. Aug. 22, 2011). Accordingly, the court accepts all well-pleaded allegations of the complaint as true and "view[s] them in the light most favorable to the nonmoving party." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Palmer & Cay, Inc. v. Marsh & McLennan Companies*, 404 F.3d 1297, 1303 (11th Cir. 2005) (internal quotation marks omitted).

Plaintiffs seek judgment on the pleadings based on the language of the restrictive covenants in Plaintiffs' employment agreements. Having considered the restrictive covenants at issue, the Court may appropriately decide the question of their enforceability at the motion for judgment on the pleadings stage. *Palmer & Cay, Inc.*, 404 F.3d at 1311 (affirming the lower court's grant of judgment on the pleadings as to the enforceability of one of the non-solicitation agreements at issue); *Kroger Props. Inc. v. Adams-Cates Co.*, 247 Ga. 68, 69, 274 S.E.2d 329, 331 (1981) (rejecting the contention that the trial court erred in deciding the case on motion for judgment on the pleadings because "[w]hether or not a covenant against competition in an employment contract is reasonable is a question of law appropriately answered based upon the wording of the covenant.").

Lastly, as the Court's subject matter jurisdiction is based on diversity of citizenship, "the substantive law of the forum state applies." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982). Here, Georgia law on the enforceability of restrictive covenants in employment contracts applies.

**B.     DISCUSSION**

Reasonability is the touchstone for the enforceability of the restrictions imposed by restrictive covenants in an employment contract. *W.R. Grace & Co. v.*

*Mouyal*, 262 Ga. 464, 465, 422 S.E.2d 529, 531 (1992) ("[A] restrictive covenant . . . will be upheld . . . if the restraint imposed is not unreasonable . . . ."). Thus, at issue is the reasonableness of the restrictions imposed by the customer non-solicitation provision, the non-compete provision, the employee non-solicitation provision, and the non-disclosure provision of the employment agreements signed by Plaintiffs.[2]

1.   **DECLARATORY JUDGMENT ON ENFORCEABILITY OF RESTRICTIVE COVENANTS**

a.   **CUSTOMER NON-SOLICITATION**

The customer non-solicitation provisions are uneforceable as they restrict Plaintiffs from soliciting even those customers with whom Plaintiffs had no personal contact. The non-solicitation provision applicable to Ayoub states:

> I will not, during the period of my employment and for a period ending one year after the termination of my employment for any reason, directly or indirectly, solicit the business of any Person for the for the purpose of, or with the intention of, selling or providing to such Person any product or service in competition with any product or service sold or provided by the Company during the 12 months

---

[2] Defendant cites to the declaration of Steve Leslie, Softchoice's Senior Vice President of Sales, [Doc. No. 16-3, ¶ 9], in support of its contention that the initiation, coordination, or supervision of a customer relationship at Softchoice results in customer contact. However, generally, the court may not "consider matters outside the pleadings when passing on a Rule 12(c) motion for judgment on the pleadings." *Horsley v. Feldt*, 304 F.3d 1125, 1136 n.6 (11th Cir. 2002). Should the court consider the declaration, however, the motion at issue would be treated as one for summary judgment. Fed. R. Civ. Proc. 12(d). Here, the Court, in its discretion, declines to consider the Leslie declaration.

immediately preceding the termination of my employment with the Company; provided that the provisions contained in this Section 7 shall apply only to a Person (a) who is or was during the 12 months immediately prior to such termination either (I) a Customer of the Company or (ii) a Prospective Customer of the Company and (b) whose dealings with the Company were, in whole or in part, initiated, coordinated, supervised or conducted by me.

[Doc. No. 11-8, § 7].[3]  The non-solicitation provision applicable to Steinberger

provides:

I will not, during the period of my employment and for a period ending one year after the termination of my employment for any reason, directly or indirectly, solicit the business of any Person (a) who is or was during the 12 months immediately prior to such termination either (I) a Customer of the Company or (ii) a Prospective Customer of the Company and (b) with whom I had contact or whose business I was responsible for, either directly or in a supervisory capacity.

[Doc. No. 11-9, § 7].  Both the Ayoub Agreement and the Steinberger Agreement

define Customer as:

[A]ny Person (I) to whom the Company has sold or leased computer equipment, computer software or computer services or (ii) from whom the Company has purchased or leased computer equipment, computer software or computer services for purposes of resale . . . .

---

[3]  The court can consider documents attached to pleadings in its analysis of a motion for judgment on the pleadings without converting the motion to one for summary judgment if the attached document is "central to the plaintiff's claim" and its authenticity is not challenged.  *Horsley*, 304 F.3d at 1134.  Here, Plaintiffs have attached the employment agreements at issue to their complaint.  The Court considers these agreements as interpretation of the restrictive covenants in the agreements is central to this case and the authenticity of these agreements is not challenged.

[Doc. 11-8, § 1(e); Doc. 11-9, § 1(e)].  And both define Prospective Customer as:

> [A]ny person to whom the Company has sent or delivered a sales or servicing proposal or contract in connection with the Business of the Company . . . .

[Doc. 11-8, § 1(g); Doc. 11-9, § 1(g)].

In the absence of a territorial restriction, a non-solicitation provision survives judicial scrutiny only if it narrowly defines the customer base the employer seeks to protect from solicitation by former employees.  *See Mouyal*, 262 Ga. at 467, 422 S.E.2d at 532.  The *Moyal* Court concluded that a restrictive covenant prohibiting the former employee from soliciting those customers "which the employee contacted during his tenure with the employer" was reasonably narrow and, thus, did not require a territorial restriction.  262 Ga. at 467, 422 S.E.2d at 533.  *Moyal* defined contact "to mean interaction between the employee and the customer/client/account which takes place in an effort to further the business relationship.  *Id.* at 467 n.4, 422 S.E.2d at 533 n.4.  The requirement for contact between the former employee and the customer provides the employer a legitimate means of "protect[ing] the employer's interest in preventing the employee from exploiting *personal relationships* the employee has enjoyed with the employer's customers," while limiting the reach of the restrain placed on the former employee.  *Id.* at 262 Ga. 466, 422 S.E.2d at 532

(emphasis added). Relying on *Moyal*, the Georgia Court of Appeals invalidated a non-solicitation provision which provided that the former employee could not solicit those customers of the employer whom she contacted directly or those about whom she had confidential or proprietary information. *Trujillo v. Great S. Equip. Sales, LLC*, 289 Ga. App. 474, 657 S.E.2d 581 (2008). According to the court, "Georgia law is clear that unless the nonsolicit covenant pertains *only to those clients with whom the employee had a business relationship during the term of the agreement*, the nonsolicit covenant must contain a territorial restriction." *Id.* at 477, 657 S.E.2d at 584 (quoting *Adv. Tech. Consultants v. RoadTrac*, 250 Ga. App. 317, 321, 551 S.E.2d 735, 738 (2001)) (emphasis in original).

In lieu of a territorial restriction, the non-solicitation provisions at issue attempt to narrowly define the customer base which Plaintiffs are restricted from soliciting. The Ayoub Agreement prohibits Ayoub from soliciting those customers or prospective customers "whose dealings with the Company were, in whole or in part, initiated, coordinated, supervised or conducted by me" [Doc. No. 11-8, § 7]. The Steinberger Agreement prohibits Steinberger from soliciting customers or prospective customers with whom Steinberger "had contact or whose business [she] was responsible for, either directly or in a supervisory capacity" [Doc. No. 11-9, § 7].

Both agreements seek to restrict the solicitation of customers to beyond those customers with whom Plaintiffs had contact. While Softchoice argues that supervision and coordination of customer relationships involves customer contact, it provides no case law in support of its position. It is reasonable to suppose that an employee could supervise or coordinate the efforts of other employees involved in building business relationships with specific customers on behalf of the employer without having any contact with those customers. In such an instance, the necessary "business relationship" forms between the customer and the employee who was in direct contact with the customer on behalf of the employer rather than between the customer and the employee acting as a supervisor or coordinator, whose efforts the customer may not even be aware of.

Under the clear terms of the agreements, Plaintiffs are not only prohibited from soliciting those customers whom they had contact with the year prior to leaving Softchoice, but also those customers with whom they may have had no contact but whose dealings with Softchoice they supervised or coordinated. Plaintiffs, in supervising or coordinating the actions of those salespersons who directly contacted the customers may not have had the opportunity to build "personal relationships" with Softchoice customers. Although Softchoice has a

legitimate interest in preventing the exploitation of personal relationships its employees developed with its customers while at Softchoice, it can not cast a wider net in the form of a restrictive covenant which prohibits its former employees from reaching out to those customers with whom they had no direct contact and the opportunity to develop personal relationships. Additionally, if, as Softchoice contends, supervision involves customer contact, there is no need for the Steinberger Agreement to refer to the supervision of customer relationships as a category apart from customer contact, as such contact would be a function of supervision. In sum, the non-solicitation provisions of Ayoub and Steinberger Agreements are unenforceable as they are not restricted to those customers with whom Ayoub and Steinberger had contact.

### b. NON-COMPETE

The non-compete provisions of the Ayoub and the Steinberger Agreements are unenforceable. First, Georgia law does not provide for the "blue penciling" of restrictive covenants executed prior to 2011. *Boone v. Corestaff Support Svcs, Inc.*, 805 F.Supp.2d 1362, 1377 (noting that O.C.G.A. § 13-8-2.1(a) authorizes covenants "that restrain trade in a reasonable manner" but that the statute does "not apply in actions determining enforceability of restrictive covenants entered into before" 2011)

(citations omitted). *Cox v. Altus Healtcare and Hospice, Inc.*, 308 Ga. App. 28, 30, 706 S.E.2d 660, 663–664 (2011). Thus, "whether they are individually or collectively categorized as nonsolicit or noncompete covenants, Georgia law is clear that if one of them is unenforceable, then they are all unenforceable." *Adv. Tech. Consultants, Inc. v. Roadtrac, LLC*, 250 Ga. App. 317, 320, 551 S.E.2d 735, 737 (2001); *Johnstone v, Tom's Amusement Co.*, 228 Ga. App. 296, 297, 491 S.E.2d 394, 397 (1997) ("[A]n unenforceable nonsolicit covenant invalidates any noncompete covenants found in the same agreement, for Georgia does not 'blue pencil' restrictive covenants ancillary to employment contracts."). Because the non-solicit provisions of the Ayoub and the Steinberger Agreements are uneforceable, the non-compete provisions are also unenforceable.

Second, the non-compete provisions are unenforceable as they are overbroad in that they seek to restrict Plaintiffs from conducting activities beyond those they performed for Softchoice. Under Georgia law, "language which restricts employees from activities in a much more limited fashion than is necessary for the protection of the employer will not withstand the reasonableness test so as to uphold the covenant." *Puritan/Churchill Chem. Co. v. Eubank*, 245 Ga. 334, 335, 265 S.E.2d 16, 17 (1980). In *Eubank*, the Georgia Supreme Court declared the restrictive covenants at

issue unreasonable as they prevented an employee, who had merely worked as a salesman, from "owning, managing, controlling, operating or even participating in owning, managing or controlling any business" which was in competition with his employer. Similarly, in *Browning v. Orr*, 242 Ga. 380, 249 S.E.2d 65 (1978), the non-compete provision at issue was declared unenforceable as it prohibited the former employee from being employed in "capacities dissimilar" from her former position. Additionally, in *Harville v. Gunter*, 230 Ga. App. 198, 495 S.E.2d 862 (1998), the court concluded that the non-compete provision was overbroad in terms of the activities it prohibited, as the employee, a speech pathologist, was prohibited from being an officer, director, or shareholder of a competitor. The *Harville* Court explained that the covenant "impos[ed] a greater limitation on the employee than [was] necessary" because it restrained the employee from "activities which [were] very different from her work as a speech pathologist." *Id.* at 230 Ga. App. at 864, 495 S.E.2d at 199.

The Ayoub and the Steinberger Agreements contain materially similar non-compete provisions [*compare* Doc. No. 11-8, § 8 *with* Doc. No. 11-9, § 8]; the provision in the Ayoub Agreement provides:

> I will not, . . . for a period ending one year after termination of my employment . . . , directly or indirectly, provide, within the Territory, Services either on my own behalf or on behalf of any other Person, who is, at the time, directly or indirectly, in competition with that area of the

Business of the Company in which I worked during the 12 months
immediately preceding the termination of my employment with the
Company, whether as an officer, director, shareholder, partner,
proprietor, employee, agent, consultant, lender or independent
contractor.

[Doc. No. 11-8, § 8]. Thus, Ayoub and Steinberger may not "directly or indirectly,

provide . . . Services [on behalf of themselves or a Softchoice competitor] . . . ,

whether as an officer, director, shareholder, partner, proprietor, employee, agent,

consultant, lender or independent contractor" within the defined territory [Doc.

Nos. 11-8, § 8 and 11-9, §8]. Plaintiffs were employed in computer sales at

Softchoice; it is not contended that they held any "managerial, fiduciary, or

operational positions" [Doc. No. 31-1, 17]. However, the non-compete agreements

at issue put in place a wholesale prohibition against Plaintiffs becoming officers,

directors, or shareholders of a Softchoice competitor. Those positions entail

activities which are very different from the sales activities of Plaintiffs' on behalf of

Softchoice. Although Defendant argues that the non-compete provisions simply bar

Plaintiffs from conducting computer sales on behalf of a competitor, regardless of

the designation given to the position they hold, the breadth of the non-compete

provisions is not so limited. The provisions not only bar Plaintiffs from offering

"Services" (computer sales) directly but also from doing so indirectly. In expending

their efforts as officers, directors, or shareholders of a corporation selling computers in competition with Softchoice Plaintiffs would be facilitating computer sales in competition with Softchoice—that is, Plaintiffs would be "indirectly" providing "Services" for a competitor, "whether as an officer, director, or shareholder," an activity barred by the non-compete provisions. Thus, by restricting Plaintiffs from taking part in activities which are very different from those in which they undertook while at Softchoice, the non-compete provisions place a greater than necessary restriction on Plaintiffs. *See Ken's Stereo Video Junction, Inc. v. Plotner*, 253 Ga. App. 811, 560 S.E.2d 708 (2002) (affirming declaratory judgment proclaiming a non-compete provision unenforceable, where the provision barred a car stereo installer with a consumer electronics company from, among other things, directly or indirectly engaging in a business involving the sale and/or installation of consumer electronics as a director, officer, or shareholder). Accordingly, the non-compete provisions in Plaintiffs' employment agreements are unenforceable.

### c. EMPLOYEE NON-SOLICITATION

Plaintiffs do not dispute the enforceability of the employee non-solicitation provisions as written, but they argue that those provisions should not survive independently of the customer non-solicitation and non-compete provisions. While

-14-

customer non-solicitation and non-compete provisions fall together, "Georgia's rejection of the 'blue-pencil theory of severability' does not require invalidation of the provisions concerning . . . interference with employees' contractual relations." *Sunstates Refrigerated Servs., Inc. v. Griffin*, 215 Ga. App. 61, 63, 449 S.E.2d 858, 860 (1994). In *Griffin*, the court concluded that while the non-compete provision was unenforceable, the provision prohibiting the former employee from employing members of the former employer's staff could be severed from the non-compete provision and enforced. In *Mathis v. Orkin Exterminating Co.*, 254 Ga. App. 335, 562 S.E.2d 213 (2002), the court analyzed the employee non-solicitation provision separately from the customer non-solicitation and non-compete provisions and concluded that the employee non-solicitation provision was enforceable although the other provisions were not. *See also H&R Block Eastern Enterprises, v. Morris*, 606 F.3d 1285 n.2 (2010) (Georgia's rule against blue-penciling of restrictive covenants "does not apply to non-solicitation of employees provisions"); *Wachovia Ins. Servs., Inc. v. Fallon*, 299 Ga. App. 440, 682 S.E.2d 657 (2009) (striking the customer non-solicitation as unenforceable but considering the merits of the claim for breach of the employee non-solicitation provision); *Hilb, Rogal & Hamilton Co. of Atl. v. Holley*, 284 Ga. App. 591, 644 S.E.2d 862 (2007) (concluding that while the customer

non-solicitation and non-compete provisions were unenforceable, the claim regarding the breach of the employee non-solicitation provision could proceed to trial); *Palmer & Cay of Ga., Inc, v. Lockton Companies, Inc.*, 273 Ga. App. 511, 514, 615 S.E.2d 752, 756 (2005) ("[N]onsolicitation of employees clauses and nondisclosure clauses in employment agreements are analyzed separately from nonsolicit clauses and noncompete clauses dealing with clients of the former employer."), *rev'd on other grounds*, 280 Ga. 479 (2006).

Plaintiffs point to several decisions of the Georgia Court of Appeals in support of their position that the employee non-solicitation provisions should fall with the customer non-solicitation and non-compete provisions. However, the cases cited by Plaintiffs, and others reviewed by the Court, provide little to no discussion for the basis of concluding that employee non-solicitation provision is not severable from the other restrictive covenants in an employment agreement. *See*, *e.g.*, *Cox v. Altus Healthcare and Hospice, Inc.*, 308 Ga. App. 28, 706 S.E.2d 660 (2011) (discussing the non-recruitment provision on its merits but citing to *Adv. Tech. Consultants v. RoadTrac*, 250 Ga. App. 317, 321, 551 S.E.2d 735, 738 (2001),—a case concerning only customer non-solicitation and non-compete provisions—for the proposition that the unenforceability of any restrictive covenant renders all other restrictive covenants

in the agreement unenforceable); *Global Link Logistics, Inc. V. Briles*, 296 Ga. App. 175, 674 S.E.2d 52 (2009) (concluding, without a discussion on severability, that both the customer non-compete clause and the employee non-solicitation clause were unenforceable). Thus, in view of the long line of decisions holding that employee non-solicitation provisions are severable from other, unenforceable restrictive covenants in an employment agreement, the Court concludes that the employee non-solicitation provisions in the Ayoub and the Steinberger Agreements do not fall with the customer non-solicitation and non-compete provisions in the Agreements.

d.    NON-DISCLOSURE

The Ayoub and the Steinberger Agreements contain non-disclosure provisions restricting Plaintiffs from disclosing Softchoice's confidential information [Doc. Nos. 11-8, § 3 and 11-9, § 3]. The Agreements define confidential information as information in certain enumerated categories, "which has value to [Softchoice] and is generally treated by [Softchoice] as being confidential" [Doc. No. 11-8, § 1(d)]. However, the definition specifically excludes information voluntarily disclosed to the public by Softchoice [*Id.*]. "[I]n determining the reasonableness of a covenant not to disclose, the courts must consider 1) whether the employer is attempting to protect confidential information relating to the business, such as . . . methods of

operation, names of customers, personnel data . . . and 2) whether the restraint is reasonably related to the protection of the information." *Wiley v. Royal Cup, Inc.*, 258 Ga. 357, 359, 370 S.E.2d 744, 746 (1988) (quoting *Durham v. Stand-by Labor*, 230 Ga. 558, 564, 198 S.E.2d 145, 149 (1973).

Plaintiffs argue that the non-disclosure provisions are unenforceable because they seek to prohibit from disclosure information that is "merely '*generally* treated'" as confidential [Doc. No. 31-1, 21 (emphasis in original)]. Plaintiffs equate the term "generally" to "usually" and argue that information that is only usually treated as confidential is not confidential at all. Plaintiffs provide no case law in support of their argument. They argue that the non-disclosure provision is unenforceable as it seeks to protect information Softchoice has failed to keep confidential

The ordinary meaning of the term "generally" is "in a general manner," that is "in disregard of specific instances and with regard to an overall picture" or "as a rule." Merriam-Webster's Collegiate Dictionary 520 (11th ed. 2003). The information sought to be protected by the non-disclosure provision is the type of information relating to Softchoice's business (i.e. methods of operation, billing rates and procedures, business methods, etc. [Doc. No. 11-8, § 1(d)]). And the restrain,

as it is limited to business-related information kept confidential as a rule at Softchoice, is reasonably related to the protection of the information.

Additionally, Plaintiffs' argument that the non-disclosure provisions are unenforceable because they protect information which Softchoice has not kept confidential fails. For instance, Plaintiffs contend that Softchoice will no doubt assert that its customer pricing proposals are confidential and protected from disclosure under the non-disclosure provisions even though it shared that sensitive information with Ayoub following his resignation. Thus, Plaintiffs argue, to the extent the non-disclosure provisions protect Softchoice's customer pricing proposals, they protect non-confidential matters. The plain terms of the non-disclosure provisions only protect confidential information; sensitive information that is voluntarily made public by Softchoice is not considered confidential under the Agreements. The only question at hand is whether the non-disclosure provisions are reasonable as written. At this point, the Court is not called to determine whether a particular category of information is in fact protected from disclosure because it falls under the definition of confidential information or whether Softchoice has undertaken reasonable efforts to keep sensitive information confidential. Whether the customer pricing information continues to enjoy the "confidential" designation

is a question to be answered at a later time; Softchoice's alleged failure to keep that information confidential does not call into question the reasonableness of the terms of the non-disclosure provisions. In sum, the non-disclosure provisions are reasonable and, thus, enforceable.

Overall, Plaintiffs' motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART. Specifically, the customer non-solicitation and non-compete provisions in the Ayoub and the Steinberger Agreements are declared unenforceable, but the employee non-solicitation and non-disclosure provisions are enforceable.

## 2. PERMANENT INJUNCTION

Plaintiffs seek to permanently enjoin Softchoice from enforcing the unenforceable restrictive covenants. A permanent injunction is warranted where a plaintiff has established: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006).

A plaintiff is irreparably harmed where "unenforceable restrictions [are placed] on his access to customers." *MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1242 (2005). As discussed above, the customer non-solicitation and non-compete provisions in the Ayoub and the Steinberger Agreements are unenforceable, and, thus, Plaintiffs have suffered an irreparable harm in the form of an unreasonable restriction on their access to customers. However, Plaintiffs have remedies available at law. They have sought and obtained a declaratory judgment proclaiming the customer non-solicitation and non-compete provisions unenforceable. That judgment is binding on Softchoice. Plaintiffs have not sought monetary damages. Although Plaintiffs argue that there is no adequate remedy at law that would compensate them for the expense and trouble of duplicative litigation should Softchoice seek to enforce the restrictive covenants, enjoining future litigation is "generally unnecessary, as res judicata and collateral estoppel are usually more than adequate to protect defendants against repetitious litigation." *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980). Accordingly, Plaintiffs motion for permanent injunction is DENIED.

### 3. BREACH OF CONTRACT COUNTERCLAIM

Softchoice alleges that Plaintiffs have breached the terms of their employment agreements concerning customer non-solicitation, non-competition, employee non-solicitation, and non-disclosure. Plaintiffs seek dismissal of Softchoice's counterclaim for breach of contract on the basis that all the restrictive covenants in the Agreements are unenforceable. Based on the Court's determination above, Counterclaim Count I is DISMISSED IN PART. Specifically, Count I is dismissed to the extent it alleges a breach of the customer non-solicitation and non-compete provisions, but may proceed to the extent it asserts breach of the employee non-solicitation and non-disclosure provisions.

III. MOTION TO AMEND SCHEDULING ORDER AND FOR RECONSIDERATION AND CLARIFICATION

Having considered the parties' joint motion to amend the scheduling order to extend discovery, the Court is not amenable to extending the time-line for discovery to the full extent proposed by the parties. Accordingly, the parties' joint motion to amend scheduling order to extend discovery [Doc. No. 54] is GRANTED IN PART and DENIED IN PART. Specifically, the extended discovery period shall close on September 30, 2012. The parties are DIRECTED to submit a revised proposed scheduling order for the Court's consideration.

Additionally, Plaintiffs have moved for reconsideration and clarification of the Court's order of April 4, 2012, addressing a number of discovery disputes between the parties. The Court sustained Softchoice's objection to Plaintiffs' Interrogatory No. 18 based on the arguments of the parties during the March 15, 2012 teleconference. Plaintiffs had ample opportunity to raise all arguments in support of their position at that time. Having re-viewed those arguments, the Court concludes that reconsideration of its order with respect to Plaintiffs' Interrogatory No. 18 is not warranted. Additionally, Softchoice's objections to Plaintiffs' Request for Production Nos. 57 and 58—requests related to Interrogatory No. 18—are SUSTAINED.

Lastly, Plaintiffs seek clarification regarding the Court's order as it relates to Request for Production Nos. 40 and 80. Request No. 40 seeks "All correspondence or other communications exchanged between Defendant and any other third party (including but not limited to any client or prospective client) concerning Plaintiffs or the allegations in this lawsuit" [Doc. No. 55, 12]. Plaintiffs state that they are entitled to all non-privileged communications responsive to Request No. 40. Softchoice states that it has agreed to produce non-privileged information responsive to Request No. 40. Accordingly, the Court considers the matter resolved.

With respect to Plaintiffs' Request for Production No. 80, Plaintiffs argue that they are entitled to obtain confidentiality agreements between Softchoice and its employees to show that Softchoice did not require its sales employees to sign confidentiality agreements and, thus, made little or no effort to ensure that sensitive information remained confidential. Softchoice argues that to the extent Plaintiffs want to show that only a few Softchoice employees were bound by a confidentiality agreement Plaintiffs can discover the information by asking about the number of Softchoice employees bound by a confidentiality agreement in interrogatories or depositions. The Court agrees. Accordingly, Softchoice's objections to Plaintiffs for Production No. 80 are SUSTAINED.

IV.     **CONCLUSION**

For the above mentioned reasons, Plaintiffs' motion for judgment on the pleadings [Doc. No. 31] is **DENIED IN PART** and **GRANTED IN PART**. Specifically, the customer non-solicitation and non-compete provisions in the Ayoub and the Steinberger Agreements are declared unenforceable but the employee non-solicitation and non-disclosure provisions are enforceable. The motion is denied in part as to Counterclaim Count I, which is dismissed only to the extent it alleges a breach of the customer non-solicitation and non-compete provisions. Plaintiffs'

motion for permanent injunction [Doc. No. 31] is **DENIED**.  Plaintiffs' motion for reconsideration [Doc. No. 53] of the Court's April 4, 2012 order ruling on the discover disputes between the parties is **DENIED**.  Plaintiffs' motion for clarification [Doc. No. 53] is **GRANTED**.  Lastly, Plaintiffs' joint motion to amend scheduling order [Doc. No. 54] is **GRANTED IN PART** and **DENIED IN PART**.  Discovery shall close on September 30, 2012.

      **SO ORDERED**, this 3rd day of August, 2012.

                s/Steve C. Jones

                 STEVE C. JONES

                 United States District Judge